UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
PREMIUM SPORTS INC., as Assignee of
SETANTA SPORT (IRL) LIMITED, as
Broadcast Licensee of the March 31, 2009,
Venezuela/Colombia Soccer Broadcast,

                Plaintiff,

                **REPORT AND**
                **RECOMMENDATION**

  - against -

                10 CV 1982 (CBA)

CRISTINA ALZATE and JIMMY ILLESCAS,
Individually, and as officers, directors,
shareholders and/or principals of JAMAICA
TROPICAL DELI RESTAURANT INC., d/b/a
COMIDA ECUATORIANA, and JAMAICA
TROPICAL DELI RESTAURANT INC., d/b/a
COMIDA ECUATORIANA

                Defendants.
----------------------------------------------------X

On April 30, 2010, plaintiff Premium Sports, Inc. ("Premium Sports") initiated this action against defendants Jamaica Tropical Deli Restaurant Inc., d/b/a Comida Ecuatoriana ("Comida Ecuatoriana"), and Cristina Alzate and Jimmy Illescas,[1] individually and as officers, directors, shareholders and/or principals of Comida Ecuatoriana, seeking damages for the illegal broadcast of a licensed sporting event, in violation of 47 U.S.C. §§ 605(a), 605(e)(3)(C)(i)(II), and 605(e)(3)(C)(ii). (Compl.[2] ¶¶ 22-25). Despite proper service, defendants failed to answer or

---

[1] On July 22, 2010, plaintiff submitted a Notice of Partial Dismissal, dismissing the claims against Jimmy Illescas, Individually, which was so ordered by the district court on July 26, 2010.

[2] Citations to "Compl." refer to the Complaint, which was filed on April 30, 2010.

otherwise respond to the Complaint, and on August 23, 2010, plaintiff filed a motion for default judgment against defendants Alzate and Comida Ecuatoriana. The Clerk of Court thereafter entered a notation of default as to defendants Alzate and the corporate defendant on September 1, 2010.

On November 16, 2010, the motion for default judgment was referred to the undersigned to conduct an inquest and prepare a Report and Recommendation as to damages. For the reasons set forth below, the Court respectfully recommends that plaintiff be awarded statutory damages in the amount of $10,000.00 in damages, plus $680.00 in costs.

## FACTUAL BACKGROUND

Plaintiff Premium Sports is a broadcaster of sporting events, and as an assignee of Setanta Sport (IRL) Limited, was granted the right to distribute the Venezuela/Colombia soccer program scheduled for March 31, 2009 (the "Broadcast") via closed circuit television and encrypted satellite signal. (Compl. ¶¶ 16-17; Kim Aff.[3] ¶ 4). Pursuant to the contract, plaintiff was granted the right to transmit the Broadcast to entities in New York State which would exhibit the Broadcast to their patrons pursuant to licensing agreements with plaintiff. (Compl. ¶¶ 17-18; Kim Aff. ¶ 4).

Plaintiff alleges that Comida Ecuatoriana is a commercial establishment located at 88-19 Jamaica Avenue, Jamaica, New York. (Compl. ¶ 11). Plaintiff further alleges that defendant Cristina Alzate, who resides at 89-01 Jamaica Avenue, Jamaica, New York, is an officer,

---

[3]Citations to "Kim Aff." refer to Plaintiff's Affidavit dated July 23, 2010 and signed by Tae Kim, Vice President of Premium Sports Inc.

2

director, shareholder and/or principal of Comida Ecuatoriana and that she was the individual with supervisory capacity and control of the establishment on March 31, 2009. (Id. ¶¶ 6-9).

Plaintiff alleges that it hired auditors from Signal Auditing, Inc. "to identify establishments that unlawfully exhibited the program." (Kim Aff. ¶ 6). As part of their assignment, the auditors were provided with a list of commercial establishments that had been legally authorized to exhibit the Broadcast to their patrons. (Id. ¶ 7). According to plaintiff, on March 31, 2009, auditor Cosmo Lubrano visited Comida Ecuatoriana, where he observed a portion of the Broadcast being displayed to approximately 60 customers at the defendants' establishment. (Kim Aff., Ex. B[4]). The plaintiff further alleges that defendants were not authorized to exhibit the Broadcast and must have "used an illegal satellite receiver, illegal satellite access card, intercepted Plaintiff's signal or used a device to intercept Plaintiff's broadcast." (Id. ¶ 10).

On April 30, 2010, plaintiff filed the instant Complaint, pursuant to 47 U.S.C. § 605, seeking statutory damages and attorney's fees based on the claim that on March 31, 2009, defendants illegally displayed the Broadcast to customers at Comida Ecuatoriana without licensing the Broadcast from plaintiff. (Lonstein Aff.[5] ¶ 3; Compl. ¶¶ 22-25).

Plaintiff served copies of the summons and Complaint upon the defendants pursuant to the Federal Rules of Civil Procedure.[6] When defendants failed to answer or otherwise respond,

---

[4] Citations to "Kim Aff., Ex. B" refer to the Piracy Affidavit of Cosmo Lubrano, dated April 5, 2009.

[5] Citations to "Lonstein Aff." refer to the affidavit of Julie Cohen Lowenstein filed on August 23, 2010.

[6] Personal service was effected as to defendant Alzate on May 18, 2010 and the corporate entity Comida Ecuatoriana was served via the Secretary of State on May 18, 2010.

3

plaintiff moved for default judgment on August 23, 2010. The Clerk of the Court entered a notation of default on September 1, 2010, and the case was referred for an inquest.

Following the referral by Judge Amon, this Court ordered the parties to submit papers in connection with plaintiff's request for damages and scheduled an inquest hearing which was held on February 4, 2011. Defendants failed to appear at the hearing and have not submitted any papers in connection with this action.

During the inquest hearing, plaintiff presented the testimony of Cosmo Lubrano, the auditor who observed the Broadcast being exhibited in the defendant establishment. Mr. Lubrano testified that on March 31, 2009, he entered Comida Ecuatoriana, located at 88-19 Jamaica Avenue, Woodhaven, Queens at approximately 8:30 p.m. (Tr. at[7] 5). He described the establishment as a restaurant with a bar towards the back. (Id. at 7). Earlier that evening, Mr. Lubrano had seen an advertisement on a chalkboard outside that advertised the soccer match, Colombia versus Venezuela, with the time and the date. (Id. at 6). In addition to the chalkboard or easel on the sidewalk outside the establishment, Mr. Lubrano saw a printed advertisement in the glass door of Comida Ecuatoriana which was advertising all of the games in the four-day event. (Id.)

Upon entering the establishment, he observed a large-screen 60 inch television on the back wall facing out to the front which was showing the line-ups for the Venezuela/Colombia match. (Id.) He also observed another 60 inch television screen directly opposite that one facing the back. Finally, in the right corner, there was a small 19 inch television, also showing the

---

[7]Citations to "Tr. at" refer to pages in the transcript of proceedings held before this Court on February 3, 2010.

match. (Id. at 6-7). The manager approached Mr. Lubrano, asked him what he was doing, and then "quickly chased" Lubrano from the restaurant. (Id. at 7-8). According to Mr. Lubrano, the manager then changed the television screens on all three televisions to a blank screen. (Id. at 7). Mr. Lubrano estimated that there were approximately 60 patrons in the restaurant, which he estimated was about half full, with a total capacity of approximately 150 people. (Id. at 8).

Plaintiff seeks $10,000 in statutory damages, pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $35,000 in enhanced statutory damages, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and $2,108.00 in attorneys' fees and costs.

## DISCUSSION

I.  Default Judgment

   A. Legal Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the clerk's record of the case. See id. Second, after the Clerk of the Court enters default against a party, if that party fails to appear or otherwise moves to set aside the default pursuant to Rule 55(c), the court may enter default judgment. See Fed. R. Civ. P. 55(b).

If the amount of damages must be ascertained in order for default judgment to be entered, the court may conduct a hearing. See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95. In this case, a hearing was held on February 3, 2011, and plaintiff submitted papers in support of its request for damages.

In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, simply because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including: 1) whether the grounds for default are clearly established; 2) whether the claims were pleaded in the Complaint thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in

awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and 3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).

Once a defendant is found to be in default, it is deemed to have admitted all of the well-pleaded allegations in the complaint as to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (gathering cases). For the purposes of an inquest, the court may accept as true all factual allegations in the Complaint, except those claims relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155; see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

### B. Entry of Default Judgment

The Complaint contains one claim for relief. Plaintiff alleges that the defendants violated 47 U.S.C. § 605(a) through the unauthorized reception of plaintiff's satellite communications.

Here, it is clear that the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605. Section 605(a), which provides, *inter alia*, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person," 47 U.S.C. § 605(a), has been held to apply to the interception of cable communications originating as a satellite or radio transmission. See International Cablevision, Inc. v. Sykes, 75 F.3d 123,

7

131-32 (2d Cir.), cert. denied, 519 U.S. 929 (1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *5; Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 109 (E.D.N.Y. 1997). Here, defendants' alleged conduct – the unauthorized interception, receipt, and broadcast of the Broadcast derived from satellite communications – violates this statute.

Moreover, it is beyond dispute that defendants are in default. Both the corporate defendant, Jamaica Tropical Deli Restaurant Inc., and the individual defendant, Cristina Alzate, are in default because neither has responded to the Complaint.[8] See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"). Moreover, the corporate defendant has not obtained counsel, and failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel). Unlike those instances where courts have been hesitant to enter default judgment because there were potentially millions of dollars at stake, the amount of money involved in this case is not great. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).

---

[8]The liability of the individual defendant is discussed in detail infra at 17-18.

Here, defendants have not only failed to file an answer or otherwise move with respect to the Complaint, but they have also failed to respond either to plaintiff's motion for entry of default judgment or to the Order from this Court dated November 17, 2010, relating to the calculation of damages. Thus, plaintiff's evidence on damages has not been refuted. Given the numerous opportunities afforded defendants and their apparent lack of interest in participating in these proceedings, there is no compelling reason to delay further.

Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted.

II. Damages

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish its entitlement to recovery "in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing Transportes Aereos De Angola v. Jet Traders Inv. Corp., 624 F. Supp. 264, 266 (D. Del. 1985)), aff'd, 873 F.2d 38 (2d Cir. 1989).

Here, plaintiff has filed reasonably detailed affidavits and exhibits pertaining to the damages incurred. In addition, at the hearing before this Court on February 3, 2011, counsel for plaintiff had the opportunity to present her argument for damages. As such, the Court has more

than sufficient information to make an informed recommendation regarding damages.

A. Statutory Damages

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). In this instance, plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). (Pl.'s Damages Mem.[9] at 8).

Section 605 provides for penalties "for each violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added). Although Section 605 requires the court to assess damages based on each "violation" of the statute, there is no statutory definition of "violation." See Garden City Boxing Club, Inc. v. Rosado, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005). Moreover, in cases such as this, involving the theft of services by a commercial establishment, it is often difficult to assess a precise figure. However, most cases applying this statute in a commercial context have interpreted the showing of a single event on a single night as one violation. See, e.g., id.; Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111.

In determining the amount of damages that may be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v.

---

[9]Citations to "Pl.'s Damages Mem." refer to the Plaintiff's Memorandum of Law, dated August 23, 2010.

10

Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing an award from $250,000 to $10,000 for commercial broadcast of a boxing match); Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. at 111 (citing cases). The factors to be considered in determining the appropriate amount of damages include the "'pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'" Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting Cablevision Sys. Dev. Co. v. Cohen, No. 84 CV 1155, slip. op. at 4-5 (E.D.N.Y. May 20, 1988) (interpreting 47 U.S.C. § 553)); see also Entertainment By J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In calculating damages, some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment. See, e.g., Top Rank, Inc. v. Ortiz, No. 01 CV 8427, 2003 WL 1960211, at *3 (S.D.N.Y. Mar. 27, 2003); Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum where plaintiff failed to establish any actual damages because plaintiff did not submit evidence of the cost of the license fee for defendants to broadcast the boxing event legally); Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons"); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. at 484 (awarding statutory damages of $10,000 where it found the statutory maximum of

$250,000 to be excessive).

Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast. See, e.g., J & J Sports Productions, Inc. v. Welch, No. 10 CV 159, 2010 WL 4683744, at *4 (E.D.N.Y. Nov. 10, 2010) (multiplying the number of patrons present at the unauthorized broadcasting by the residential charge for the pay-per-view event being shown, $54.95); Garden City Boxing Club v. Rosado, 2005 WL 3018704, at *3-4 (same); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4-5 (E.D.N.Y. Mar. 28, 2003) (awarding $50 per patron); Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., 2002 WL 2022522, at *3 (same); Time Warner Cable of New York City v. Googies Luncheonette, Inc. ("Googies"), 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111 (same); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

In this case, plaintiff seeks $10,000 in statutory damages, the maximum amount available under Section 605(e)(3)(C)(i)(II). (Pl.'s Damages Mem. at 9). Plaintiff asserts that there are a number of components to the pecuniary loss suffered here, including the fact that the Broadcast in this instance was exhibited to approximately 60 patrons and was advertised outside the establishment. (Id.; Kim Aff., Ex. B). Given that the establishment appears to be a restaurant with a bar (see Tr. at 7; Kim Aff., Ex. B), plaintiff asserts that there was a likely increase in defendants' profits based on the sale of food and beverages to patrons as a result of the Broadcast. (Pl.'s Damages Mem. at 9).

In addition, plaintiff has lost the licensing fees that it would otherwise have charged defendants had the Broadcast been legally authorized. (Id.) Plaintiff contends that this type of

12

piracy makes plaintiff's product, the licensing of sporting events to such establishments, less valuable when patrons can view the Broadcasts for free. (Id.) Given the significant loss of business and good will, plaintiff argues that the imposition of the maximum amount of statutory damages is appropriate in this instance. (Id.)

One obvious starting point for determining damages would be the licensing fee that defendants would have paid to show the Broadcast legally. However, plaintiff has not provided any information as to what the licensing fee for this Broadcast would have been. If statutory damages were assessed at the rate of $50 per patron, as some courts have done (see discussion at page 10, supra), this would result in an award of $3,000 based on the estimated 60 patrons present in Comida Ecuatoriana during the illegal Broadcast. (Kim Aff. Ex. B; Tr. 7). This amount would be greater than the statutory minimum of $1,000. See 47 U.S.C. § 605(e)(3)(C)(ii); Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp. 2d 59, 63-64 (E.D.N.Y. 2006) (awarding $1,000 where multiplying the number of patrons by $50 would lead to a total less than the statutory minimum). An award of $3,000 would also be greater than the amount of damages often imposed against individuals who have received unauthorized programming in their own homes. See, e.g., Time Warner Cable v. Barnes, 13 F. Supp. 2d 543, 548 (S.D.N.Y. 1998) (awarding statutory damages of $1,000 against each of three defaulting residential defendants); Time Warner Cable v. Rivera, No. 94 CV 2339, 1995 WL 362429, at *4 (E.D.N.Y. Jun. 8, 1995) (awarding statutory damages of $1,000 against defaulting residential defendant who used converter for eight months).

Accordingly, the Court respectfully recommends that plaintiff be awarded statutory damages in the amount of $3,000.

B. Enhanced Damages

Plaintiff also seeks enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii), providing for additional awards of up to a maximum of $100,000 for all willful violations. (Pl.'s Damages Mem. at 10). The statute permits enhanced damages where the violation was committed willfully and for purposes of private financial gain. See, e.g., J & J Sports Productions, Inc. v. Benson, No. 06 CV 1119, 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007) (awarding statutory damages of $1,200 and enhanced damages of $3,600 where plaintiff did not advertise the event, charged no cover, and five patrons were present); Entertainment by J & J, Inc. v. Ramsarran, 2002 WL 720480, at *2 (awarding statutory damages of $5,000, increased by $10,000 for willfulness under 47 U.S.C. § 605(e)(3)(C)(ii), where defendant displayed a boxing match to eighteen patrons in his bar); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12 (awarding statutory damages of $3,750, increased by $5,000 for willfulness under section 605(e)(3)(C)(ii), where defendant displayed a boxing match to seventy-five people inside and twenty people outside his restaurant); Joe Hand Promotions v. Burg's Lounge, 955 F. Supp. 42, 44 (E.D. Pa. 1997) (awarding $1,000 in statutory damages under § 605(e)(3)(C)(i)(II) plus an additional $1,000 based on the willful nature of the violation under § 605(e)(3)(C)(ii) where defendants were found to have broadcast a boxing event in their respective taverns). This section clearly applies to persons or entities that operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to their patrons. See Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12.

Here, the Court finds that to award statutory damages in the amount of $3,000 alone

14

would understate the seriousness of defendants' conduct here, particularly since, as plaintiff contends, it has suffered intangible losses in the form of "business investment, business opportunities, reputation, and goodwill." American Television & Commc'ns Corp. v. Floken, Ltd., 629 F. Supp. 1462, 1466 (M.D. Fla. 1986). The evidence demonstrates that defendants acted willfully in illegally intercepting the Broadcast under circumstances warranting the imposition of enhanced damages under Section 605(e)(3)(C)(ii). Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'" ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985)).

In this case, it is clear that defendants intercepted and exhibited the Broadcast without entering into a licensing agreement with plaintiff or paying fees to plaintiff. To accomplish this, defendants must have spliced an additional cable line or redirected a wireless signal from an adjacent residence into the establishment, utilized an unauthorized decoder, illegally transferred an authorized decoder to the location, illegally altered cable service to bring the signal to the defendants' establishment, or misrepresented their commercial establishment as a residential property to allow purchase of the Broadcast. (Kim Aff. ¶ 10). The fact that defendants not only exhibited the Broadcast to patrons purchasing items from the establishment, but advertised the event ahead of time to lure people into the establishment, indicates that defendants acted willfully in illegally intercepting the Broadcast for profit.[10]

---

[10]One court in this district has noted that it is conceivable that a small business owner could accidentally sign up for residential cable service, or that an error on the part of a cable service provider could lead to a business being improperly categorized as a residence, thereby bringing into question whether or not a defendant willfully committed the violation. See J&J Sports Productions, Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *4 (E.D.N.Y. May

Given the willful nature of the violation, and mindful that approximately 60 patrons viewed the Broadcast, this Court concludes that an additional award of $7,000 is sufficient to deter future violations. This Court therefore respectfully recommends that plaintiff be awarded $7,000 in enhanced damages.

Accordingly, in light of the willful nature of the violation, it is respectfully recommended that plaintiff be awarded statutory damages of $3,000, plus an additional $7,000 in enhanced damages, for a total of $10,000 in damages. This is in line with previous awards made by courts in the Eastern and Southern District of New York involving the illegal interception of satellite transmissions by private commercial establishments. See, e.g., J & J Sports Productions, Inc. v. Welch, 2010 WL 4683744, at *1 (awarding $4,670.75 in statutory damages and $9,341.50 in enhanced damages for an establishment with 85 patrons); J&J Sports Productions, Inc. v. Meson de Colombia, No. 10 CV 1142, 2010 WL 4791771, at *3 (E.D.N.Y. Oct. 7, 2010) (awarding $1,500 in statutory damages and $4,500 in enhanced damages for an establishment with approximately 20 patrons); J & J Sports Productions, Inc. v. The Spot in the City Inc., 2010 WL 1730767, at *2 (S.D.N.Y. Apr. 28, 2010) (awarding $3,000 in statutory damages and $3,000 in enhanced damages for an establishment with 45 patrons); J & J Sports Productions, Inc. v. Arhin, No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. April 17, 2009) (awarding $1,100 in statutory damages and $3,000 in enhanced damages where 20 patrons were present); J&J Sports Productions, Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 475 (E.D.N.Y. 2009) (awarding $3,000 in statutory damages where number of patrons was unsubstantiated); J & J

---

16, 2006). However, given that in this case defendants not only advertised the Broadcast, but then defaulted and failed to provide an explanation, this Court declines to speculate as to potential excuses for what appears to be a willful interception of the event

Sports Productions, Inc. v. Gonzalez, No. 08 CV 885, 2008 WL 5050052, at *1 (E.D.N.Y. 2008) (awarding $1,000 in statutory damages and $3,000 in enhanced damages where 25 patrons were present).

C. The Individual Defendant's Liability

Plaintiff's Complaint names Cristina Alzate as an "officer[], director[], shareholder[] and/or principal[]" of Comida Ecuatoriana. (Compl. ¶ 8). To establish a contributory violation of 47 U.S.C. § 605(a), plaintiff is required to demonstrate that Alzate authorized the violations set forth in the Complaint. Garden City Boxing Club, Inc. v. Morales, No. 05 CV 64, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005) (citing cases); see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). "'To establish vicarious liability, . . . [plaintiff] must show that . . . [the individual defendants] had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *10 (quoting Kingvision Pay-Per-View, Ltd. v. Olivares, No. 02 CV 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (internal citation omitted)).

The undisputed allegations in the Complaint indicate that Alzate had the requisite control and financial interest to be held vicariously liable for the violation. (See Compl. ¶¶ 8, 9). Since Alzate has defaulted in this action, plaintiff's allegations remain unchallenged and must be accepted as true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

Accordingly, the Court respectfully recommends that defendant Cristina Alzate be held

17

jointly and severally liable with the corporation for damages awarded in this action.[11]

III. Attorney's Fees

The plaintiff requests $2,108.00 in attorney's fees, including reimbursement of filing and service of process fees. (Lonstein Aff. ¶ 8).

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is entitled to costs and reasonable attorney's fees. See 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails"); see also Int'l Cablevision v. Sykes, 997 F.2d at 1009. In support of plaintiff's request for fees, plaintiff has submitted an Affidavit of Julie Cohen Lonstein, setting forth the amount of time spent by members of the Lonstein Law Office, P.C., in performing various services in connection with this case, along with an indication of the amount charged.

The total fee requested includes $1,164.00 for 5.82 hours of attorney time and $264.00 for 3.52 hours of paralegal time. While the affidavit indicates that the hours listed were derived from contemporaneous time records, it fails to provide any information on the experience of the attorney or attorneys performing the work, nor does it provide any basis on which the Court could conclude that the rates charged were reasonable when considered in light of the factors set forth in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008). See Jackson Hewitt Inc. v. Excellent Professional Servs. LLC, No. 08 CV 5237,

---

[11] One court in this district recently found that similar allegations were insufficient to hold an individual defendant vicariously liable because the plaintiff had not demonstrated sufficient control by the owner or financial interest in the violation. See J & J Sports Productions, Inc. v. Daley, No. 06 CV 238, 2007 U.S. Dist. LEXIS 49839, at *8-11 (E.D.N.Y. Feb. 15, 2007).

18

2010 WL 5665033, at *3 (E.D.N.Y. Nov. 8, 2010) (finding that "[i]t is the fee applicant, however, who bears the burden of demonstrating by satisfactory evidence in addition to the attorney's own affidavits that the requested hourly rates are the prevailing market rates" (internal quotations omitted)). Accordingly, the Court finds that plaintiff has failed to provide sufficient information at this time to warrant a recommendation as to fees. If plaintiff wishes to supplement its request with additional information, the Court recommends that plaintiff be given ten (10) days to file a supplemental submission.

However, based on the supporting affidavits, this Court finds the $330 requested as reimbursement for the costs for service of process and the $350 in filing fees are reasonable, and therefore, respectfully recommends that plaintiff be awarded $680 in total litigation costs from defendants.

## CONCLUSION

The Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted, and that plaintiff be awarded $10,000, plus $680 in costs, plus any additional interest that accrues from the date of this Report and Recommendation until the entry of judgment, together with post-judgment interest pursuant to 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 25, 2011

Cheryl L. Pollak
United States Magistrate Judge